UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **RODNEY BODINE,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 2:15-cv-00413-RDP |
| } | |
| **COOK'S PEST CONTROL, INC., et al.,** } | |
| } | |
| **Defendants.** } | |

## MEMORANDUM OPINION

This case is before the court on Defendants' Amended Motion to Dismiss, Without Prejudice, or, in the Alternative, Motion to Stay Action and to Compel Arbitration (Doc. 6), filed April 6, 2015.  The Motion has been fully briefed.  (*See* Docs. 4, 7, 11, 13).  Quite simply:

> This is another arbitration dispute in which the parties are litigating whether or not they should be litigating.  The familiar scenario is that the parties agree in writing to arbitrate any disputes between them, but then one party files a lawsuit taking the position that the agreement to arbitrate is inapplicable, invalid, or unenforceable for one reason or another.

*Anders v. Hometown Mortgage Servs., Inc.*, 346 F.3d 1024, 1026 (11th Cir. 2003) (Carnes, J.). Here, Plaintiff contends the agreement to arbitrate is invalid because it is tainted by certain provisions that conflict with federal law.  For the reasons outlined below, however, the court concludes that Defendants' Motion (Doc. 6) is due to be granted.

**I.    Background**

On March 10, 2015, Plaintiff filed this action against Defendants Cooks Pest Control, Inc. and Max Fant for violations of the Uniform Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. § 4301 *et seq.* and Alabama state law.  Specifically,

Plaintiff asserts that: (1) Defendants subjected him to discrimination and harassment on account of his membership in the armed services, (2) Defendants failed to adequately train and supervise their agents and employees, and (3) Defendants conduct was so egregious as to support a claim of intentional infliction of emotional distress.

On April 16, 2015, Defendants filed the current Motion. (Doc. 6).[1] Defendants seek to compel Plaintiff to submit all of his disputes to binding arbitration, in accordance with an Employment Agreement (the "Agreement") that Plaintiff entered into with Defendant on September 17, 2012. (*See* Doc. 2, at 10). In Article VII ("Alternative Dispute Resolution") of the Agreement, the parties agree to submit "all disputes, controversies or claims of any kind and nature between the parties" to arbitration upon the failure of good faith negotiations and mediation. (*Id.* at 10 (emphasis omitted)).

In addition, three other clauses in the Agreement are relevant herein. First, the Agreement purports to limit the employee's arbitration costs to "no more than $150," except that "the arbitrator may as part of his final decree reapportion the fees, including attorney's fees, and costs between the parties as allowed by applicable law . . . ." (*Id.* at 13 ("Article VII.D")). Second, the Agreement attempts to impose a six month limitations period on claims brought pursuant to the employment relationship. (*Id.* at 14 ("Article VII.E")). Finally, the agreement contains a severability clause that states in relevant part: "If *any* term or provision of this Agreement shall be invalid or unenforceable to any extent or application, then the remainder of this Agreement shall be valid and enforceable to the fullest extent and the broadest application permitted by law." (*Id.* at 14 (emphasis added)).

---

[1] On April 8, 2015, Defendants filed their first Motion to Dismiss, Without Prejudice, or, in the Alternative, Motion to Stay Action and to Compel Arbitration (Doc. 2), but that Motion was terminated after Defendants filed their amended and corrected motion (Doc. 6), which is the subject of this Order.

**II.     Discussion**

Plaintiff challenges the enforceability of the parties' arbitration clause. The parties do not dispute that, under USERRA, the arbitration clause contains provisions purporting to unlawfully limit the applicable statute of limitations and unlawfully apportion certain fees and costs to Plaintiff.[2] However, the parties' Agreement also contains a severability provision. Although Plaintiff argues that the two offensive provisions referenced above operate to invalidate the entire arbitration clause, Defendants respond by pointing out that the Agreement allows for severance of invalid provisions, which permits the court to enforce the remainder of the arbitration clause. Defendants have the better end of the argument.

Section 2 of the Federal Arbitration Act ("FAA") provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Paladino v. Avnet Computer Technologies, Inc.*, 134 F.3d 1054, 1057 (11th Cir. 1998) (quoting FAA, 9 U.S.C. § 2 (1994)). The Supreme Court has long interpreted that statutory pronouncement as "a congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The FAA was enacted "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)).

---

[2] Defendants do not defend the legality of either provision. Furthermore, Defendants have agreed to stipulate that (1) "the provision purporting to limit the statute of limitations in the arbitration agreement, as applied, is of no force or effect," and "pursuant to 38 U.S.C. § 4327(b), all claims alleged in Plaintiff's Complaint arising from or related to Plaintiff's USERRA action are timely," and (2) although the requirement to pay $150 is "not an unreasonable limitation on Plaintiff's USERRA rights. . . . Defendants agree to bear any and all costs associated with any arbitration, mediation, or negotiation of this matter, as outlined in the terms of the arbitration agreement." (Doc. 7, at 2-3).

To this end, agreements to arbitrate are akin to forum-selection clauses. *Cunningham v. Fleetwood Homes of Ga., Inc.*, 253 F.3d 611, 617 (11th Cir. 2001) (citing *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974)). It is well settled that a party agreeing to arbitrate statutory claims "does not forgo the substantive rights afforded by the statute; [rather, the party] only submits to their resolution in an arbitral, rather than a judicial, forum." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.*, 473 U.S. 614, 628 (1985).  Federal statutory claims are generally arbitrable.  *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991).  The parties agree there is no exception to this general rule simply because a claim is made under USERRA.  (*See* Doc. 11, at 6 ("Defendants focus a large portion of their Reply on addressing the argument that USERRA claims, generally, are subject to arbitration.  However, Plaintiff has asserted no argument to the contrary.")); *see also Garrett v. Circuit City Stores, Inc.*, 449 F.3d 672, 676 (5th Cir. 2006) (upholding arbitration clause for USERRA claim); *Landis v. Pinnacle Eye Care, LLC*, 537 F.3d 559, 564 (6th Cir. 2008) (same).  Although the parties in this case agree that USERRA claims may be arbitrable, they disagree about whether the arbitration clause they signed is invalid on the ground that it contains provisions which conflict with the substantive protections of USERRA.  Therefore, the disposition of this motion turns on this question – should the court enforce the severability portion of the Agreement and surgically lance the unlawful portions of the arbitration clause (as opposed to voiding the entire arbitration clause).

Binding Alabama and Eleventh Circuit precedents make clear that the severability clause at issue in this case operates to strike the offensive portions of the Agreement, thereby saving the arbitration clause from being voided in its entirety.  In the context of other, similar federal statutory remedial schemes, the Eleventh Circuit has made clear "[w]hether the severability

4

provision is to be given effect is a question of state law, because in placing arbitration agreements on an even footing with all other contracts, the FAA makes general state contract law controlling." *Jackson v. Cintas Corp.*, 425 F.3d 1313, 1317 (11th Cir. 2005) (quoting *Anders*, 346 F.3d at 1032). "Alabama law favors severability, and gives full force and effect to severability clauses." *Anders*, 346 F.3d at 1032.

In *Anders*, the court addressed the severability of offensive provisions in an arbitration agreement and applied Alabama law. 346 F.3d at 1024. The *Anders* court found that "even if the remedial restrictions within the arbitration agreement in this case are invalid, as [the plaintiff] argues, the parties must still arbitrate." *Id.* at 1031. Other Alabama decisions have reached similar conclusions. *See, e.g.*, *Ex parte Thicklin*, 824 So. 2d 723, 735 (Ala. 2002) (enforcing an arbitration provision after severing an illegal prohibition on punitive damages); *Ex parte Celtic Life Ins. Co.*, 834 So. 2d 766, 769 (Ala. 2002) (same; holding also there is a "general 'duty of the court to preserve so much of a contract as may properly survive its invalid and ineffective provisions' " (quoting 17A C.J.S. *Contracts* § 297 (1999))). Like the Agreement in this case, the arbitration agreements in *Thicklin* and *Celtic Life* included severability clauses. *Thicklin*, 824 So. 2d at 734; *Celtic Life*, 834 So. 2d at 768.

Plaintiff relies heavily on *Paladino v. Avnet Computer Techs., Inc.*, which held that "the presence of an unlawful provision in an arbitration agreement may serve to taint the entire arbitration agreement, rendering the agreement completely unenforceable, not just subject to judicial reformation." 134 F.3d at 1058 (citations omitted). However, since *Paladino*, and as another court in this Circuit has observed, the Eleventh Circuit has made "the critical observation that implicit in the *Paladino* decision is the fact that either the agreement did not contain a severability clause or severability was never raised." *Penberthy v. AT&T Wireless Servs., Inc.*,

5

354 F. Supp. 2d 1323, 1328 (M.D. Fla. 2005); *see Jackson*, 425 F.3d at 1317 (noting that *Paladino* was "inapposite because there was no mention in that appeal of severability as a possible remedy." (citation omitted)); *Anders*, 346 F.3d at 1031-32 ("Nothing in the *Paladino* decision indicates that there was a severability provision in that agreement to arbitrate. . . . If the severability provision is given effect, it means that in this case, unlike in *Paladino*, the remainder of the arbitration agreement survives any invalidity of its remedial restrictions.")). The parties' severability clause makes this case is more like *Jackson* and *Anders*, and unlike *Paladino*.

In this case, the Agreement clearly and explicitly contemplates severability.[3] Therefore, in view of the clear and well-settled Alabama law favoring severability, as well as the FAA's requirement that arbitration agreements be treated no less favorably than other contracts under state law, the severability clause in this case should be applied to prevent any invalid provisions from destroying the entire agreement to arbitrate.  *See Anders*, 346 F.3d at 1032 (applying Alabama law to sever unlawful provisions of arbitration clause); *see also Jackson*, 425 F.3d at 1317 (reaching the same conclusion under Georgia law).  In this way, the court is able to both preserve as much of the parties' agreement as possible, while also upholding the "liberal federal policy favoring arbitration agreements." *Anders*, 346 F.3d at 1029 (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24).

---

[3] Defendants base their severability argument on Paragraph VIII's language suggesting that certain provisions "are separate and severable, and the unenforceability of any specific covenant shall not affect the validity of any other covenant set forth herein." (*See* Doc. 7, at 4 (quoting Doc. 2, at 14)). However, Defendants selectively quote from that provision, which limits severability to "the covenants and restrictions contained in Article V and Article VI" (pertaining to "Restrictive Covenants" and "Nondisclosure" respectively).  The unlawful provisions disputed on this Motion (Doc. 6) are located in Article VII ("Alternative Dispute Resolution").

Nevertheless, the Agreement also states: "If *any* term or provision of this Agreement shall be invalid or unenforceable to any extent or application, then the remainder of this Agreement shall be valid and enforceable to the fullest extent and the broadest application permitted by law." (Doc. 2, at 14 (emphasis added)). Accordingly, this provision is sufficiently broad to permit the court to strike the offensive portions of the Agreement without undermining the validity of the remaining innocuous provisions.

Specifically, because both parties agree the Agreement's six month limitations provisions are unlawful, that provision is due to be severed. Furthermore, to the extent the fee provisions could ever be deemed unreasonable, the fee provisions are also due to be severed.[4] In accordance with Defendants' stipulation, Defendants are to bear any and all costs associated with any arbitration, mediation, or negotiation of this matter. (Doc. 7, at 3). Therefore, the court concludes that because these impermissible portions of the Agreement are due to be severed, the Agreement (as judicially revised) is not otherwise invalid. As a result, consistent with the Agreement, Plaintiff's claims are to be submitted to arbitration.

### III.   Conclusion

For the foregoing reasons, Defendants' Motion (Doc. 6) is due to be granted. Accordingly, the case is due to be dismissed without prejudice and Plaintiff is compelled to submit his claims to arbitration. In so doing, the court strikes the two above-referenced offensive provisions from the Agreement.

A separate order will be entered.

**DONE** and **ORDERED** this June 18, 2015.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[4] The court notes that when this case was filed, Plaintiff submitted a filing fee. However, USERRA provides that a court may not charge a filing fee to a claimant who files suit under that statute. Accordingly, the court has refunded the filing fee to Plaintiff. (Doc. 16). Similarly, here, there is no basis for charging Bodine in connection with the arbitration expenses that amount to an arbitration filing fee.